# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

*[This form is for prisoners to sue for civil rights violations. NEATLY print in ink (or type) your answers.]*

Scanned at WCF and Emailed
on __12/4/20__ by __JBC__ __18__ pages
            (date)     (initials)   (num)

Pedro Alvarez
_____
*[You are the PLAINTIFF, print your full name on this line.]*

v.

Wexford of Indiana, LLC
_____
*[The DEFENDANT is who you are suing. Put ONE name on this line. List ALL defendants below, including this one.]*

Case Number  3:20-cv-840
*[For a new case in this court, leave blank. The court will assign a case number.]*

*[The top of this page is the caption. Everything you file in this case must have the same caption. Once you know your case number, it is VERY IMPORTANT that you include it on everything you send to the court for this case. DO NOT send more than one copy of anything to the court.]*

## PRISONER COMPLAINT

| # | Defendant's Name and Job Title | Work Address |
|---|---|---|
| 1 | *[Put the defendant named in the caption in this box.]* Wexford of Indiana, LLC Medical Company | 5501 S. 1100 W. Westville, IN. 46391 |
| 2 | *[Put the names of any other defendants in these boxes.]* Dr. Jackson Doctor at Westville Correctional Facility | 5501 S. 1100 W. Westville, IN. 46391 |
| 3 | N.P. Jody Kupferberg Nurse Practioner Westville | 5501 S. 1100 W. Westville, IN. 46391 |

*[If you are suing more defendants, attach an additional page. Number each defendant. Put the name, job title, and work address of each defendant in a separate box as shown here.]*

1. How many defendants are you suing?  __5__  (#4 & 5# on additional page )

2. What is the name and address of your prison or jail? Westville Correctional Facility - 5501 South 1100 West Westville, IN. 46391

3. Did the event you are suing about happen there? ● Yes.  ○ No, it happened _____

4. On what date did this event occur? __May 26, 2020 (On or about )__

*[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]*

JBC

| # | Defendant's Name & Job Title | Work Address |
|---|---|---|
| 4 | R.N. Rochelle Cortelyou<br>Registered Nurse Westville | 5501 S. 1100 W.<br>Westville, IN. 46391 |
| 5 | RN. Joshua C. Kuiper<br>Registered Nurse Westville | 5501 S. 1100 W.<br>Westville, IN. 46391 |

## CLAIMS and FACTS

DO: Write a short and plain statement telling what each defendant did wrong.

DO: Use simple English words and sentences.

**DO NOT**: Quote from cases or statutes, use legal terms, or make legal arguments.

DO: Explain when, where, why, and how each defendant violated your rights.

DO: Include every fact necessary to explain your case and describe your injuries or damages.

DO: Number any documents you attach and refer to them by number in your complaint.

**DO NOT**: Include social security numbers, dates of birth, or the names of minors.

DO: Use each defendant's name every time you refer to that defendant.

DO: Number your paragraphs. [*The first paragraph has been numbered for you.*]

1. _____ (Introduction)
This is an action brought by the
Plaintiff against Defendants:
Wexford of Indiana, L.L.C., Dr. Jackson,
N.P. Jody Kupferberg, R.N. Rochelle
Cortelyou, and R.N. Joshua C. Kuiper,
who were responsible for denial of
appropriate medical treatment and care
all of which caused harm to Alvarez.

2. Plaintiff sets forth claims under the
Eighth and Fourteenth Amendments
to the United States Constitution,
pursuant to 42 U.S.C. § 1983, and
under State law.

3. Plaintiff Alvarez was an adult inmate
incarcerated by the Indiana Department
of Correction ("IDOC") at the Westville
Correctional Facility ("WCC") Westville,

Claims and Facts (continued)

LaPorte County, Indiana at all relevant times.

4. Defendant Wexford of Indiana, LLC ("Wexford") upon information and belief, was a domestic entity doing business in the State of Indiana, with offices located at 5501 South-1100 West Westville, Indiana

5. Defendant Dr. Jackson was a qualified health care provider upon information and belief, at all relevant times herein.

6. Defendant N.P. Jody Kupferberg was a qualified health care provider upon information and belief, at all relevant times herein.

7. Defendant R.N. Rochelle Cortelyou was a qualified health care provider upon information and belief, at all relevant times herein.

8. Defendant R.N. Joshua C. Kuiper was a qualified health care provider upon information and belief, at all relevant

times herein.

9. Upon information and belief, Wexford is under contract oR otherwise obligated to provide medical care to incarcerated inmates for the State of Indiana at all relevant times beginning and since April 1st 2017.

(Factual Allegations)

10. On or about May 5th, 2020 Alvarez was seen in medical at Westville Correctional Facility by Heather A. McAllister, L.P.N. for Symptom Check on possible COVID-19 infection. At that time Alvarez was swabbed for a COVID-19 rapid test. His symptoms started appearing on or about April 28, 2020 and after being tested, it was found that on May 5th 2020 Alvarez was positive for COVID-19.

11. Over the month of May starting on the 5th, Alvarez was seen in Urgent Care a total of eight different times.

12. While being seen for Covid symptoms on May 14th, 2020 Alvarez began complaining about foot pain and lower left leg pain. He was given TED hose and a walker at that time. Then on May 16th, 2020 a Signal 3000 (medical Emergency) was called, because it appeared that Mr. Alvarez had fallen from being weak from not eating. However, after Shift Supervisor, Capt. Rippe reviewed the video and it showed Mr. Alvarez walking out of his room, throwing his walker, gently taking a knee, and then laying down very gently on the floor. At that point Per LT. Talbot, Mr. Alvarez was to be written up for manipulation of medical staff. R.N. Joshua C. Kuiper generated the document for this report.

13. On May 22nd, 2020 R.N. Rochelle Cortelyou received a call from the Corrections Officer of Alvarez's dorm stating Alvarez could not hold his

bladder. The Officer also mentioned that Alvarez was currently using a walker, but based on verbal reports and nursing notes, the walker was taken away and Alvarez was being charged with manipulation of medical. R.N. Cortelyou called Dr. Jackson regarding Alvarez and what transpired recently, and what his complaints were. Among his incontinence problem, Alvarez also continued to complain about his foot and leg pain, also his foot being cold. R.N. Cortelyou generated the document.

14. On May 24th, 2020 the dorm Officer again called medical about blisters on Alvarez's left foot. R.N. Cortelyou told Officer to have Alvarez place bandaids on the blisters and keep it clean and dry. Again, R.N. Cortelyou spoke to Dr. Jackson about Alvarez's left foot. According to the records from May 24th, 2020 both R.N. Cortelyou

and Dr. Jackson seem to speak more about Alvarez being very manipulative and being wrote up on a class-B conduct report, than the differant blisters appearing on Alvarez's left foot or the reason it was happening. Alvarez first complained about his foot and leg pain ten days earlyer. He made complaints about his foot and leg feeling cold.

15. Durring the month of May, starting on May 14th, 2020 Alvarez's primary concern was his left leg and foot. Medical Records generated by R.N. Rochelle Cortelyou, show that Alvarez's lower left leg was noted to be very cold, starting at med calf down to the toes; had a weak pulse compaired to his right leg and foot. R.N. Cortelyou stated compairing right and left lower extremidys, left side was cold, weak pulse, and pain level was 10 of 10. N.P. Jody

Kupferberg also was in Urgent Care at the time. N. P. Kupferberg did not do any type of examination of Alvarez's lower left calf and foot, however, she did provide an order for TED hose and walker, and seven days of regular Tylenol for the pain.

16. On May 15th, 2020 a wellness check was completed on Alvarez. The day before in the medical records for May 14th, it states that the left lower extremidy was very cold, with a weak pulse. Twenty-four hours later, medical records show no problems and state Alvarez has no complaints. Then on May 16th there's a Signal 3000, used by Alvarez for a cry for help.

17. On May 24th, 2020 dorm officer called medical reporting blisters on foot. Still with all the complaints about Alvarez's left leg and foot, cold with

a weak pulse and now blisters, ten days had passed without Dr. Jackson ever putting eyes on Alvarez's leg and foot. Medical records plainly show, that Dr. Jackson and the nursing staff beleaved Alvarez was just manipulating medical, and even after the many complaints and real symptoms, chose to look the other way than to use their medical training.

18. On May 26th 2020, Dr. Jackson was called to Urgent Care. Alvarez was found to have acute ischemia to his leg. Alvarez was then taken to LaPorte Hosiptal where it was found to be D.V.T. (Blood Clot) Because Alvarez was not seen by a doctor between May 14th and May 26th (Twelve days) the blood clot had cut off the blood supply, and Alvares's lower left leg had to be amputated.

19. On May 14th, 2020 R.N. Rochelle Cortelyou

seen Alvarez's leg and foot were very cold and didn't send him to see Dr. Jackson, when she knew there clearly a problem that could place Alvarez in danger. At the same time, N.P. Jody Kupferberg knew of the problem of Alvarez's leg and foot, but never took the time to look at his leg. Being a Nurse Practioner Kupferberg knew the dangers of a blood clot, but to chose to look the other way placing Alvarez in danger.

20. On May 15th, a wellness check was conducted by R.N. Joshua C. Kuiper on Alvarez. Alvarez's main concern the day before was his leg and foot being cold and painful. R.N. Kuiper conducted a wellness check on what? According to medical records, R.N. Kuiper never even looked at Alvarez's foot or leg. That wellness check put Alvarez in danger, by not looking at the main medical issue.

From the day before.

21. On May 24th, R.N. Rochelle Cortelyou got a call from Alvarez's dorm officer concerning blisters on Alvarez's left foot. R.N. Cortelyou spoke to Dr. Jackson about Alvarez being manipulative, but not being concerned about the possible danger posed to Alvarez.

22. On May 26th, 2020 Dr. Jackson was finally called to personally put eyes on Alvarez's leg and foot. By that time the leg and foot was dying, and Dr. Jackson foccusing on preceived manipulative behavior and not his medical training placed Alvarez in danger. Once Dr. Jackson finally did an examination on Alvarez's foot and lower left calf, he (Jackson) ordered Alvarez transported to the LaPorte Hosiptal where he was admitted May 26th due to acute ischemia of the left foot. Initially,

Dr. Venditti tryed saving Alvarez's lower left leg with pretorming a revascularization. However, the limb could not have been salvaged, and amputation of the lower left leg of Alvarez took place on May 29th 2020.

23. On information and belief, the Health Care Providers themselves, directly and by and through their agents, apparent agents, servants and employees who were acting within the scope of the employment or apparent authority, were negligent in providing healthcare to Alvarez during the time period, because their actions and/or failures to act failed to comply with the appropriate standard of care.

24. The failures of the healthcare providers described herein were part of a continuing course of misconduct.

25. More specifically, the Healthcare Providers failed to comply with the standard of care when they failed to appropriately diagnose, evaluate, treat and follow Alvarez's medical condition, especially relating to his lower left leg and foot complaints, during the time period which led to his continued suffering, medical procedures, pain, and the loss of his lower left leg after amputation of limb. These actions and/or failures to act that failed to comply with the appropriate standard of care that include, but not limited to:

   (A.) The failure to appropriately evaluate, diagnose and/or treat the condition that Alvarez was suffering.

   (B) The failure to gain informed consent from Alvarez.

   (C.) The failure to communicate about Alvarez's condition and care with other providers or agents.

   (D.) The failure to administer med-

ication and treatment to Alvarez.

## (Legal Claims)

### Violation of the Eighth Amendment Brought Pursuant to 42 U.S.C. § 1983

26. When Alvarez was having complaints of painful and cold leg and foot, he had serious medical needs which required appropriate treatment.

27. In comitting the acts and omissions herein, particularly, but not limited to, rhetorical paragraphs (10-25), All medical staff listed above, was deliberately indifferant to Alvarez's medical needs.

28. All medical staff listed above, was aware of Alvarez's serious medical needs, was deliberately indifferent to such needs, all were personally involved with the denial of appropriate care to Alvarez by denying Alvarez

access, permission, or means to receive medical attention.

29. The actions and omissions of all medical staff described herein therefore constitute a violation of rights secured to Alvarez by the Eighth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment to the United States Constitution.

30. As a direct and proximate result of the actions and omissions of the Healthcare Providers, each of them listed above, caused Alvarez to suffer emotional distress, pain, physical suffering, loss of physical motion and use, and other damages.

WHEREFORE, Plaintiff, Pedro Alvarez, respectfully requests that this Court enter judgment in his favor against the Defendants for all damages permitted by law. Including, but not limited to,

pain, suffering, emotional distress,
Financial losses, medical bills, punitive
damages, attorney fees, expenses, costs,
and any other appropriate legal relief
to which the Court may deem him
entitled.

(Demand for Trial by Jury)

31. Plaintiff, Pro-se, hereby requests a
trial by jury with respect to any
issues so triable.

Respectfully Submitted,

Pedro Alvarez

5. When did this event happen?
  ○ Before I was confined.
  ○ While I was confined awaiting trial.
  ● After I was convicted while confined serving the sentence.
  ○ Other: _____

6. Have you ever sued anyone for this exact same event?
  ● No.
  ○ Yes, attached is a copy of the final judgment OR an additional sheet listing the court,
      case number, file date, judgment date, and result of the previous case(s).

7. Could you have used a prison grievance system to complain about this event?
  ○ No, this event is not grievable at this prison or jail.
  ● Yes, I filed a grievance and attached is a copy of the response from the final step.
  ○ Yes, this event was grievable, but I did not file a grievance because _____

_____

_____

_____

8. If you win this case, what do you want the court to order the defendant(s) to do?
      [NOTE: A case filed on this form will not overturn your conviction or change your release date.]

Enter judgment in favor and against the Defendants
for all damages permitted by law, including and not
limited to, pain, suffering, emotional distress, financial
losses, medical bills, punitive damages, attorney fees,
expenses, costs and any other appropriate legal relief.

[Initial Each Statement]
  P.A. I will pre-pay the filing fee OR file a prisoner motion to proceed in forma pauperis.
  P.A. I will keep a copy of this complaint for my records.
  P.A. I will promptly notify the court of any change of address.
  P.A. I WILL NOT send more than one copy of any filing to the court.
  P.A. I WILL NOT send summons, USM-285, or waiver forms to the clerk.
  P.A I declare under penalty of perjury that the statements in this complaint are true.

  I placed this complaint in the prison mail system on 10 / 4 /2020 at 12:00 am/pm.
      [Do not fill in this date and time until you give the complaint to prison officials to send to the court.]

  _____                    953024
  Signature                                             Prisoner Number

[DO NOT write in the margins or on the back of any pages. Attach additional pages if necessary.]